James H. Voortman and Jane P. Voortman, his wife, Appellants, *v.* Bucks County Zoning Hearing Board and the County of Bucks, Appellees.

Argued June 6, 1975, before Judges CRUMLISH, JR., KRAMER, and BLATT, sitting as a panel of three.

*J. Lawrence Grim, Jr.,* with him *Grim & Grim,* for appellants.

*Richard A. Rosenberger,* with him *Souder, Rosenberger & Bricker,* for appellee.

OPINION BY JUDGE CRUMLISH, JR., August 26, 1975:

This is an appeal by James H. Voortman and Jane P. Voortman, husband and wife, from an order of the Court of Common Pleas of Bucks County which affirmed the denial by the Bucks County Zoning Board of a variance from a public sewer requirement sought by the Voortmans to expand their nonconforming mobile home park.

The Voortmans are owners of a 21.5 acre tract in Richland Township upon which they presently operate a twenty unit mobile home park named Cherry Mobile Home Park. At all times pertinent to this appeal, Richland Township did not have a zoning ordinance and so the terms of the Bucks County Zoning Ordinance of 1969 controlled. Under this ordinance, the Voortman property was zoned R-C (residential-conservation) which does not permit mobile home parks; but since the Voortmans' twenty unit mobile home park predated the ordinance, it was allowed to continue as a nonconforming use. In August of 1970, the Voortmans decided to expand this use by the addition of twenty mobile homes—the maximum

expansion permitted by Section 920 (b) (3) of the county zoning ordinance. They applied for and were subsequently granted a permit by the Bucks County Department of Health to construct an on-site septic sewage system to complement their existing on-site system. Since Section 450 (13) (L) of the ordinance requires mobile home parks to be furnished with public sewage, however, the Voortmans were compelled to apply to the zoning board for a variance from this requirement. After six hearings and two remands by the lower court for a supplementation of the record spanning a period of three and one-half years, the board denied the variance. Its decision was essentially based upon findings questioning the validity of percolation and ground water level tests which formed the basis of the on-site sewage permit previously issued by the Department of Health; the adequacy of the Voortman tract to accommodate the 100% reserve area required by the Department of Health regulations for on-site septic systems; the potential pollution of neighboring wells by the proposed system; and upon a finding that it would be feasible for the Voortmans to construct a package treatment plant for the additional twenty mobile home units, the effluent from which could be piped 800 feet to the nearest perennial running creek. The board thus concluded that the Voortmans had failed to establish the requisite unnecessary hardship for a variance because their objection to the package treatment plant proffered by the board meant merely a financial hardship. Implicit in its decision, additionally, was the conclusion that the approval of the Department of Health of the on-site system proposed by the Voortmans did not give adequate assurance of the protection of the health and safety of adjacent property owners. An appeal was timely taken to the court below which, in turn, affirmed the board.[1] This appeal followed. We reverse.

---

1. In affirming the zoning board, the lower court agreed that the Voortmans had only established an economic hardship which

Since the lower court did not take additional evidence, our review of the zoning board's decision is to determine whether it abused its discretion or committed an error of law. *Dewald v. Board of Adjustment, City of Pittsburgh,* 13 Pa. Commonwealth Ct. 303, 320 A. 2d 922 (1974).

"It is, of course, well settled in this Commonwealth that an applicant seeking a variance for an expansion of a nonconforming use must still meet the ordinary requirements for the grant of a variance, *i.e.,* that the refusal to grant the variance would cause an unnecessary hardship *peculiar to that property* and that the grant of the variance would not be contrary to the health, safety and general welfare of the community. Walter v. Philadelphia Zoning Board of Adjustment, 437 Pa. 277, 263 A. 2d 123 (1970)." (Emphasis in original.) *Snyder v. Zoning Hearing Board, Borough of Zelienople,* 20 Pa. Commonwealth Ct. 139, 341 A. 2d 546 (1975).

The central argument of the Voortmans on appeal is that the requirement of public sewage, or more specifically a properly installed package treatment plant which could cost them as much as $85,645.00, is an unnecessary hard-

would not support a variance. It raised *sua sponte,* however, the question of whether the requirement of public sewage under Section 450(13)(L) is applicable to a mobile home park with nonconforming use status in a zoning district which does not, itself, impose the requirement of public sewers. Although neither of the parties to this appeal disputes the applicability of this requirement to the Voortman application, we simply note that Section 910(b)(3) of the county ordinance, controlling the permitted expansion of nonconforming uses, provides that "all performance standards required by this ordinance and other applicable regulations for the use involved shall be met." Section 450(13)(L) is a regulation applicable to a mobile park use, and thus must be satisfied. The Voortmans do not here challenge the power of the county to impose the public sewer regulation as a condition to the expansion of their nonconforming use, nor that a variance is the appropriate remedy to alleviate the hardship arising from this regulation. *See Philadelphia v. Angelone,* 3 Pa. Commonwealth Ct. 119, 280 A. 2d 672 (1971).

ship in itself in the context of a proposed expansion of twenty mobile homes in a rural area of Richland Township where public sewers are not contemplated in its plans for the future and the landowner has already obtained all necessary permits for on-site sewage from the County Health Department. We agree. In *West Goshen Township v. Bible Baptist Church of West Chester,* 11 Pa. Commonwealth Ct. 74, 313 A. 2d 177 (1973), we were faced with a similar problem. The appellee in *West Goshen* had previously been granted a special exception to construct a church and Sunday school, with a variance to use an onsite water supply on the condition that should public water become available it would discontinue use of its private well. The appellee subsequently applied for a variance from the public water requirement to allow it to adapt the school buildings for parochial pre-school and elementary school use. The zoning board denied the variance on the ground that it was without power "to rewrite the zoning ordinance" to dispense with the districtwide requirement of public water.[2] In affirming the reversal of the zoning board by the lower court, Judge WILKINSON, speaking for this Court, cogently noted:

> "The Board felt that the appellee had not shown unnecessary hardship peculiar to its property. Appellant cites and relies on the long line of cases which properly establish that unnecessary hardship to the property in question must be established. See Borough of Ingram v. Sinicrope, 8 Pa. Commonwealth Ct. 448, 303 A. 2d 855 (1973); Marple Gardens, Inc. v. Zoning Board of Adjustment and Johnson, 8 Pa. Commonwealth Ct. 436, 303 A. 2d 239 (1973); Mobil Oil Corp. v. Zoning Board of Adjustment, 5 Pa. Commonwealth Ct. 535, 291 A. 2d 541 (1972). An exam-

---

2. The appellee-party in interest here, Richland Township, raises the same objection to the variance sought by the Voortmans.

ination of those cases and the authorities therein cited make it clear that the degree of the hardship that must be shown must bear some relationship to the necessity. It would be hard to imagine a more *unnecessary* hardship than not to permit the appellee to use on-site water which is immediately available, is supplied in accordance with a variance granted within three years, and is admittedly healthful water. It becomes even more unnecessary and a more apparent abuse of discretion when not only is the hardship unnecessary, but it is clearly a hardship that is beyond appellee's power to remedy, *i.e.,* it is not a matter of expending money; no off-site water is available at any price. Further, appellee agrees and has agreed to discontinue the on-site water use immediately when off-site water becomes available.

"Finally, one of the important factors to be considered is whether the hardship is peculiar to this property. There is certainly nothing in this record to show that there is another property in this Township that has potable and healthful on-site water expressly approved for one purpose as a substitute for off-site water, and not permitted to be used for another purpose with regard to the same property. It is hard to visualize anything more idiosyncratic to this particular property." *West Goshen, supra,* 11 Pa. Commonwealth Co. at 77, 313 A. 2d at 179, 180 (Emphasis in original.)

Of course, in the instant case, it is the zoning board's position that a package treatment is a feasible alternative to the on-site septic system proposed by the Voortmans, and therefore their hardship is merely economic, whereas the landowner in *West Goshen* had no viable alternative to on-site water. We are not persuaded by this distinction, however, for two reasons. Initially, the record does not establish that the Voortmans could, in fact, operate an

*approved* package treatment plant on their property.[3] To render the plant operational, the Voortmans would have to install an effluent discharge pipe at least 800 feet to the nearest perennially flowing water course, a branch of the Tohickon Creek. As this creek does not run through the Voortman property, the necessary piping would require either the acquisition of a subsurface easement over private land or a right-of-way along the public road adjoining the property. There is no evidence that the Voortmans would be able to obtain either access, or at what cost. Secondly, even were access to the creek obtained, it is not at all clear that the creek would be acceptable to the County Health Department or the Department of Environmental Resources (DER) as an effluent disposal site. Under 25 Pa. Code §179.6, the sewage disposal system of a mobile home park must comply with the regulations of 25 Pa. Code §73.1 et seq. From the description of the package treatment plant propounded by the zoning board, it would appear to fall within the definition of an "aerobic sewage treatment tank" under 25 Pa. Code §73.1. Such systems may only be installed on an experimental basis, and only then subject to the approval and continuing review of DER, 25 Pa. Code §73.41. The Township's engineer could not verify whether the nearest branch of the Tohickon Creek was, in fact, perennial, and admitted that in his experience DER had never issued a permit for a package treatment plan discharging effluent to an intermittent creek. The Voortmans' engineer, on the other hand, was quite positive that a permit would not be issued for such a system. Given this state of the record, we can only conclude that the zoning board abused its discretion

---

3.    Section 221(a) of the county ordinance defines "public sewer" as: "any municipal or privately owned sewer system in which sewage is collected from building and piped to an *approved* sewage tank disposal system. It may also be referred to as 'off-lot' or 'off-site' sewer. This shall include capped sewers when installed to county specifications." (Emphasis supplied.)

in finding that a package treatment plant was a viable alternative to the on-site system proposed by the Voortmans and approved by the County Department of Health.

Finally with respect to the impact of the grant of the variance upon the public health and welfare of the community, we must conclude that the zoning board exceeded its jurisdiction by, in effect, collaterally attacking the determinations made by the Department of Health in granting the on-site septic system permit. That agency has primary authority over such determinations, and it is not for the zoning board to enforce the technical engineering regulations of that agency even though it may be convinced that a permit was improvidently granted. See the able discussion of Judge SATTERTHWAITE in *Caldwell v. Northampton Township Zoning Board of Adjustment,* 18 Bucks Co. L. Rep. 573, 580 (1968), *aff'd* 1 Pa. Commonwealth Ct. 222, 273 A. 2d 557 (1971), where the cases are collected and analyzed.[5] Under the limited facts of this case, we must conclude that where a property is located in an area in which public sewers will not be available in the foreseeable future, where no other means of public sewage have been established as feasible, and where an applicant has obtained all necessary permits for on-site sewage from the agency vested with jurisdiction to approve such facilities, an unnecessary hardship peculiar to the applicant's property has been established to justify the grant of a variance from the requirement of public sewage.

Order reversed.

---

5. Although a zoning board may determine whether there is evidence that particular health regulations have been complied with, *Caldwell, supra,* here that determination has been made by the Department of Health and the zoning board may not disregard the prior approval. *See Mignatti Construction Co., Inc.'s Zoning Application,* 3 Pa. Commonwealth Ct. 242, 246, 281 A.2d 355, 356 (1971).