In Re: Appeal of Louis J. Cutillo, III and Louis Argyris from Decision of Lower Pottsgrove Township Zoning Board of Adjustment.

Lower Pottsgrove Township, Appellant.

Argued October 6, 1975, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*R. Mark Faulkner*, with him *O'Donnell, Weiss, Mattei, Eschbach, Suchoza & Koury,* for appellant.

*Robert D. Reber, Jr.,* with him *Ronald H. Reynier,* and *Reynier, Crocker, Allebach & Reber,* for appellees.

OPINION BY JUDGE WILKINSON, November 14, 1975:

It is unfortunate that the court below did not have the benefit of Judge KRAMER'S opinions in *Robin Corporation v. Board of Supervisors of Lower Paxton Township,* 17 Pa. Commonwealth Ct. 386, 332 A.2d 841 (1975), and *Board of Commissioners of McCandless Township v. Beho Development Company, Inc.,* 16 Pa. Commonwealth Ct. 448, 332 A.2d 848 (1975), when it decided this case in December, 1974. Based on the principles set forth in those cases, we must reverse.

Appellees are equitable owners of a tract of land in an R-3 Residential District and desire to construct townhouses. This use is permitted in R-3; however, the zoning ordinance permits townhouses only when a public water supply is available. Appellees applied for a variance[1] and

---

1. In appellees' opening statement to the zoning hearing board, it was made quite cear that the only thing under consideration was an application for a variance. "The public water supply facilities are not there, are not readily available, are not projected in the near or the immediate future of being available to the

offered convincing and uncontradicted testimony that an adequate private on-site water supply was available and a public water supply was not. The variance was denied by the zoning hearing board on the grounds that appellees had not shown that the property could not be used for the other permitted uses that did not require a public water supply. Appellees appealed to the court below.

The lower court properly concluded that a variance was not warranted. The opinion goes on to state:

"However, it should be kept in mind that to preserve the validity of a zoning ordinance in its application to the community in general, the variance provision of the enabling act functions as an 'escape valve' so that when the regulations which apply to all are unnecessarily burdensome to a few because of certain unique circumstances, a means of relief from the mandates of the ordinance is provided. See *Pierce v. Zoning Board of Adjustment*, 410 Pa. 262 (1963). Therefore, if a request for a variance is denied, indicating that there is nothing about the petitioner's land or his alleged hardship that is any different than that of everyone else with land similarly zoned, then his next most logical step is to attack the validity of the ordinance as it applies to everyone. See *Anstine v. Zoning Board of Adjustment*, 411 Pa. 33 (1963). It can be seen, therefore, that a challenge to the validity of a zoning ordinance is a natural and foreseeable outgrowth of a request for a variance. Since the appellants are here before the Court, and, since our scope of review is to determine whether or not the Zoning Board committed an abuse of discretion or an error of law, the Court will save all the parties involved the time and expense of taking the second step by deciding the constitutionality or validity of the section of the ordinance in question."

---

tract in question. And it's a result of this that we have been forced to come in and ask for the variance in regard to an on-site water system."

We cannot concur that the lower court could consider this as more than a variance question.

Judge KRAMER'S able and extensive discussion in *Robin* and *McCandless* makes it unnecessary to repeat the factors involved here which impel our conclusion.

"In this latter case (as in the instant case), allowing the landowner to proceed pursuant to section 1004 would, as a practical matter, result in the placing of a great and undue burden on municipal governing bodies. If a landowner who has what is essentially a variance claim can short-cut the review process, bypass the zoning hearing board, and go directly to the governing body for a disposition, the usefulness and legislatively intended function of local hearing boards would be greatly derogated. We do not believe such was the legislative intention behind Article 10 of the MPC, and, had it been the Legislature's desire to effect such a radical modification of existing practice, it would have been much more specific in its choice of statutory language.

"Fully cognizant of the fact that there is considerable tension between different sections of the MPC, we are constrained to hold that (1) the law of variances is still viable and remains unchanged under Article 10 of the MPC; and (2) Section 1004 'substantive challenges' and requests for variances are mutually exclusive remedies, a request for a variance being required whenever a landowner desires to challenge the zoning of his particular tract through a claim which, if established on the record, would warrant the granting of a variance." *Robin, supra,* 17 Pa. Commonwealth Ct. at 395-96, 332 A.2d at 847 (footnote omitted).

"To obtain a variance, a challenging landowner must prove considerably more than the prohibition of a property's most profitable use." *Id.,* 17 Pa. Commonwealth Ct. at 397, 332 A.2d at 847.

"The 1972 amendments to the Pennsylvania Municipalities Planning Code (MPC), adding provisions for an application for a curative amendment under Sections 609.1 and 1004, 53 P. S. §§10609.1, 11004, establish two *mutually exclusive* remedies available to a landowner in the context of an alleged 'confiscation' of his property. The utilization of each necessarily depends upon the particular *cause* of the alleged confiscation. Where the confiscation is allegedly due to unique physical conditions or circumstances, such as the topography of the property involved, thus creating an unnecessary hardship by the strict application of the zoning ordinance, the landowner's remedy is to apply to the zoning board for a variance under Section 912 of the MPC, 53 P. S. §10912. Where, however, the property allegedly confiscated does not suffer from unique physical conditions or circumstances, or would not otherwise qualify for a variance under Section 912 due to the nature of the change in zoning requested, the landowner's only remedy is to apply for a curative amendment under Sections 609.1 and 1004 of the MPC. Township of Neville v. Exxon Corp., 14 Pa. Cmwlth. 225, 322 A.2d 144 (1974)." *Id.* 17 Pa. Commonwealth Ct. at 398, 332 A.2d at 848 (CRUMLISH, J., concurring) (footnote omitted). (Emphasis in original.)

Since appellees sought only a variance and did not follow the procedural requirements to challenge the constitutionality of the ordinance under Section 1004 of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P. L. 805, *as amended,* 53 P. S. §11004, we must reverse.

As indicated by the court below, the refusal of a variance in this case is not inconsistent with our opinion in *West Goshen Township v. Bible Baptist Church of West Chester,* 11 Pa. Commonwealth Ct. 74, 313 A.2d 177 (1973). In that case, we affirmed a lower court which

allowed a variance for on-site use of water for the operation of a church school when the zoning ordinance required a public water supply. The distinction between that case and the instant one is that in *Goshen,* it was shown that the land and church buildings thereon erected would suffer hardship peculiar and idiosyncratic to it if the variance were not granted. It is abundantly clear that such is not the case here.

The appeal of Lower Pottsgrove Township is sustained and the order of the lower court, directing that a building permit be issued, is reversed.